UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY ANNE VANDAM,

        Plaintiff,

v.                                        Case No. 1:04-CV-538
                                        Hon. David W. McKeague

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

                                /

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

Plaintiff was born on December 15, 1956 and attended four years of college (but did not obtain a degree) (AR 63, 86, 365).[1] Plaintiff stated that she became disabled on June 11, 1998 (AR 63). She had previous employment as a pharmaceutical sales representative, real estate agent, real estate broker, self-employed general building contractor, and real estate assistant (AR 90-95). Plaintiff identified her disabling conditions as chronic fatigue and clinical depression (AR 80). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on November 4, 2003 (AR 15- 23). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

**I. LEGAL STANDARD**

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905

F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. *Id.* (citing 20 C.F.R. §§ 404.1520(b) and 416.920(b)(2000)). Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Id.* (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)(2000)). Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled. *Abbott*, 905 F.2d at 923.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability and that she met the DIB insurance requirements through December 30, 2003 (AR 16, 22).[2] Second, the ALJ found that she suffered from severe impairments of major recurrent depression, panic disorder with agoraphobia, anxiety and hypoglycemia (AR 17). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 22). The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> to perform light work subject to minimal restrictions of daily living, but with no actual documented episodes of decompensation in a work setting, plus moderate restrictions of social functioning as well as concentration, [persistence], and pace; the claimant can adjust to light work in a low-stress environment, where she is allowed to work [independently], performing only simple, unskilled work with only superficial social interaction.

(AR 22). The ALJ concluded that plaintiff was unable to perform her past relevant work (AR 22). The ALJ also found plaintiff's allegations regarding her limitations were not totally credible (AR 22).

---

[2] The ALJ observed that plaintiff testified that she worked 12 hours per week as a real estate assistant from August 1999 through October 2001, long after her alleged onset date of disability June 11, 1998 (AR 16-17, 63). The ALJ stated that the documentary evidence suggests that plaintiff expended more hours and earned more income than she admitted during the testimony (AR 16-17, 95). For example, plaintiff stated in her work history report that she was employed as a real estate assistant earning $300 per week from July 1999 through October 2001 (AR 95). However, plaintiff had no reported income from 1999 through 2001 (AR 16, 73). Despite this apparent inconsistency between plaintiff's testimony and the documentary evidence, the ALJ accepted plaintiff's reported income of "zero" from 1999 through 2001, concluded that plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability (June 11, 1998) and found "that disposition is more appropriate at a different sequential evaluation step" (AR 17).

At the fifth step, the ALJ determined that plaintiff was capable of performing a significant range of light work (AR 22). Specifically, the ALJ found that an individual with plaintiff's limitations could perform at least 825 jobs in the regional economy, which the vocational expert identified as the tri-county area of Ottawa, Allegan and Kent Counties (AR 21, 391-93). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 21-22).

### III. ANALYSIS

Plaintiff raises two related issues on appeal.

**A.  The ALJ's findings are not supported by substantial evidence as he disregards Ms. VanDam's testimony, the statements of Dr. Cunningham, the statements of Dr. Fielder and the testimony of the vocational expert.**

**B.  Administrative Law Judge, Daniel Dadabo erred by discounting Ms. VanDam's complaint [sic] that were consistent with the medical records pursuant to *King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984).**

**1.  Standard of review for medical treaters**

Plaintiff contends that the ALJ improperly disregarded the opinions of two medical treaters, Curt Cunningham, D.O., and Wendy Fielder, Ph. D. Plaintiff's Brief at 6-12. A plaintiff's treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). However, an ALJ is not bound by the conclusory statements of doctors, particularly where

5

the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).

The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Id.*, *quoting* 20 C.F.R. § 404.1527(d)(2). In summary, the opinion of a treating physician is entitled to great weight, but must be supported by sufficient clinical findings and be consistent with the evidence. *See Melton v. Commissioner of Social Security*, No. 98-5671, 1999 WL 232700, *4 (6th Cir. April 12, 1999); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate "good reasons" for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

### 2.     Dr. Cunningham's February 26, 2004 statement is new evidence

As an initial matter, plaintiff cites at length from Dr. Cunningham's February 26, 2004 statement regarding plaintiff's condition. Plaintiff's Brief at 8-9. The ALJ never considered this statement, because it was prepared more than two months after the decision denying benefits. Plaintiff generated this statement to present to the Appeals Council (AR 9, 313-40). When a plaintiff submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988)

(per curiam).³ In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *See Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and the evidence might have changed the prior proceeding.

The standard in determining whether to remand a claim for the consideration of new evidence is governed by statute. "The court . . . may at any time order the additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is *material* and that there is *good cause* for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g)(emphasis added). In order for a claimant to satisfy the burden of proof as to materiality, "he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711. Good cause is shown for a sentence-six remand only "if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability." *Koulizos v. Secretary of Health and Human Servs.*, 1986 WL 17488 at *2 (6th Cir. Aug. 19, 1986).

The court should not consider Dr. Cunningham's February 26, 2004 statement for two reasons. First, plaintiff has not requested a remand to consider this additional evidence. Rather, she seeks a reversal of the ALJ's decision. Second, even if plaintiff had requested a remand, she has

---

³ Section 405(g) authorizes two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Secretary (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the Secretary (sentence-six remand). *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994).

failed to demonstrate good cause. Plaintiff obtained Dr. Cunningham's statement more than two months after the ALJ denied her claim and submitted this statement to the Appeals Council to contest the ALJ's decision (AR 313). The good cause requirement is not met by the solicitation of a medical opinion to contest the ALJ's decision. *See Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997) (observing that the grant of automatic permission to supplement the administrative record with new evidence after the ALJ issues a decision in the case would seriously undermine the regularity of the administrative process). Accordingly, there is no basis for this court to review Dr. Cunningham's statement in this matter.

### 3.     Dr. Cunningham's other opinions

The ALJ had an opportunity to review other opinions and treatment notes prepared by Dr. Cunningham. The record reflects that Dr. Cunningham treated plaintiff from approximately June 1999 through July 2003 (AR 18, 276-301). In September 2003, Dr. Cunningham signed a "Medical assessment of ability to do work-related activities (mental)" (AR 273-74).[4] In this assessment, Dr. Cunningham identified that plaintiff had a "fair" ability to perform the following "occupational adjustments": follow work rules, relate to co-workers, deal with public, use judgment, interact with supervisors and function independently (AR 273). Dr. Cunningham felt that plaintiff had a "poor" ability to deal with work stress and maintain attention/concentration (AR 273). Dr. Cunningham noted that plaintiff was "fragile" and "tolerates very little stress," and that she had a "poor" ability to understand, remember and carry out even simple job instructions (AR 273-74).

---

[4] This assessment appears to be a form provided by plaintiff's counsel to Drs. Cunningham and Fielder for use at the administrative hearing (AR 259, 268).

The ALJ gave little weight to the doctor's opinion because plaintiff's visits were not part of a focused or structured counseling, the doctor relied on plaintiff's subjective complaints and the doctor was unaware of daily activities not related to him by plaintiff (AR 18). For example, the ALJ noted that plaintiff took resort trips to Orlando, Florida in the Spring of 2002 and to the Bahamas in December 2002 (AR 19, 378). Although plaintiff saw Dr. Cunningham four times in 2002 (January, April, July and October), his notes do not reflect that plaintiff took a trip to Florida or the Bahamas (AR 284-86). Dr. Cunningham's notes from January 10, 2003 make no mention of the Bahamas trip from the previous month; rather, the notes reflect plaintiff's statement that she was "sort of getting through, but I'm so close to the edge" (AR 287, 331). The ALJ could properly conclude that such trips were inconsistent with plaintiff's "asserted limitations of not leaving the house and avoiding people" (AR 18). Based on this sparse record, the ALJ could properly discount Dr. Cunningham's opinion.

### 4. Dr. Fielder

Next, plaintiff contends that the ALJ failed to follow the opinions of a psychologist, Dr. Fielder. The doctor began treating plaintiff in July 2001 (AR 256). In a June 3, 2002 statement, Dr. Fielder stated that plaintiff "often does not leave the house during the day, and even one appointment in a day stretches her energy to the limits" (AR 249). In a "Medical assessment of ability to do work-related activities (mental)" dated August 25, 2003, Dr. Fielder provided a somewhat more positive view of plaintiff's abilities than Dr. Cunningham. In the area of "occupational adjustments" Dr. Fielder noted that plaintiff had "unlimited/very good" ability to follow work rules, use judgment, interact with supervisors and function independently, "good" ability to relate to co-workers, "fair" ability to maintain attention/concentration, and "poor" ability

to deal with the public and deal with work stress (AR 260). Dr. Fielder felt that plaintiff's deficits involved her stamina, energy, ability to work consistent hours and manage stressful activities, and attributed these deficits to diagnoses of fibromyalgia and chronic fatigue syndrome (AR 260). Dr. Fielder also found that plaintiff had a poor ability to follow even simple job instructions (AR 261).

The ALJ gave Dr. Fielder's opinion "very little probative value" (AR 18). As an initial matter, the court notes that Dr. Fielder stated that plaintiff has experienced these deficits since June 1998, more than three years before the doctor began treating plaintiff in July 2001 (AR 260). The ALJ noted that plaintiff's report to Dr. Fielder, i.e., that she does not leave the house during the day and that even a single appointment with a health professional stretches her energy to the limit, was inconsistent with plaintiff's work record, in which she admitted to working approximately 12 hours a week, three days a week as a real estate assistant, whose duties included opening homes, greeting and responding to customers, and performing accounting work from August 1999 through October 2001 (AR 18, 366-67). In this regard, the court notes the absence of any reference in Dr. Fielder's notes to plaintiff taking trips to Florida or the Bahamas in 2002 (AR 250-52, 265). Plaintiff's work record and resort trips are inconsistent with a person who does not leave the house and barely has the energy to meet with a health care professional (AR 18).

While Dr. Fielder stated that plaintiff's deficits resulted from her diagnoses for fibromyalgia and chronic fatigue syndrome, the ALJ observed that the record contained almost no medical intervention or prescribed therapy for plaintiff's allegation that she had suffered from symptoms of fibromyalgia and chronic fatigue syndrome since 1998 (AR 20). Indeed, the record does not appear to contain a definitive diagnosis of these syndromes. One of plaintiff's physicians, Amy Hollen, M.D., would not provide plaintiff with "paperwork stating chronic fatigue syndrome"

for her disability claim (AR 158). A neurologist, Desiderio F. Ines, M.D., felt that plaintiff had "[m]ost likely chronic fatigue or fibromyalgia syndrome" but stated that plaintiff should be referred to a rheumatologist "to see if she has additional fibromyalgia syndrome" (AR 157). Plaintiff saw another physician, Cindy Bos, M.D., and reported to the doctor that she was on disability (AR 239). Although there is no record of clinical testing, Dr. Bos stated that plaintiff suffered from myalgias and fatigue, and recommended regular exercise (AR 241). There is no record of plaintiff engaging in follow-up treatment for either chronic fatigue syndrome or fibromyalgia. Since, on examination, the medical record does not support Dr. Fielder's opinion that plaintiff's deficits resulted from chronic fatigue syndrome and fibromyalgia, the ALJ had an adequate basis for discounting that opinion.

### 5.     Vocational expert and ALJ's credibility determination

Finally, plaintiff contends that the ALJ improperly discounted her testimony regarding the severity of her symptoms. Specifically, plaintiff contends that the vocational expert (VE) testified that if plaintiff was entirely credible, then she could not perform any work (AR 389-90). An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question which accurately portrays the claimant's physical and mental impairments. *Id.* However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Servs.*, 39

11

F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

An ALJ's credibility determinations are accorded deference and not lightly discarded. *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993); *Hardaway v. Secretary of Health and Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987). An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. *See also Tyra v. Secretary of Health and Human Servs.*, 896 F.2d 1024, 1030 (6th Cir. 1990) (ALJ may dismiss claimant's allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict).

The ALJ found that plaintiff could perform an adequate number of jobs in Kent, Ottawa and Allegan Counties, based upon a comprehensive hypothetical question posed to the VE (AR 386-88). The ALJ posed a hypothetical question to the VE, which assumed an individual, who could perform light work, with mild restrictions of daily living activities, moderate difficulties in maintaining social functioning, moderate restrictions on maintaining concentration, persistence, pace and no decompensation on the job (AR 386-88). In addition, the person would not work in an office or talk to people on the telephone (AR 387). The ALJ's hypothetical question effectively adopted the restrictions as set forth by a non-examining State Agency physician and a consultative examiner (AR 211-237, 386-87).

The ALJ further limited the hypothetical question to production jobs (AR 387). In response, the VE identified 1500 assembly positions, 1000 hand packaging positions and 800 janitorial positions in the Grand Rapids region (AR 388). The ALJ further limited these 3300

identified light work jobs in Kent, Allegan and Ottawa Counties to those which were "low stress" (AR 392). In response, the VE stated that about 25% of the positions "take into account the need for low stress," resulting in 375 assembly jobs, 250 hand packaging jobs and 200 janitorial jobs (AR 392-93).

After establishing that an individual with these restrictions could perform 825 jobs in a three-county area, the ALJ posed another hypothetical question to the VE which assumed virtually all of plaintiff's claimed limitations:

> Now what we have are situations where four out of seven days they don't leave the house. They have to rest intermittently after even minimal activity so they go off task. We're probably talking about pursuing an activity no more than say 15 minutes before needing to rest. In addition, during the day they're going to have to take one to two hour naps. And I'm simply going to conclude that they have marked restrictions as far as the ability to maintain a pace consistently because of low energy. Okay. If that's our individual, I'm surmising that you're going to basically tell me again that there's no work available?

(AR 389). In response, the VE testified that missing four out of seven days per week, taking a break after 15 minutes of work, and taking one to two hour naps throughout the day is not consistent with competitive employment (AR 389). In other words, such an individual could not meet an employer's performance expectations (AR 390).

The issue before the court is whether the ALJ had to accept as credible plaintiff's contention about her limitations, in which case there were no jobs available, or whether the ALJ was justified in discounting plaintiff's credibility, as he did, in which case there were an adequate number of jobs available in the national economy.

13

The ALJ could properly reject the VE's testimony which was based on the assumptions as set forth in this more restrictive hypothetical question. A hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha*, 927 F.2d at 231. Contradictions exist within the record here to enable the ALJ to discount plaintiff's credibility with respect to these extreme limitations (i.e., not leaving the house four of seven days a week, need to rest after every 15 minutes, need to take one to two hour naps each day, and marked restrictions to maintain a pace consistently). The ALJ reasonably found that plaintiff's "reliability as a historian was poor," noting that plaintiff testified that she became unable to work in June 1998 (due to chronic fatigue, fibromyalgia, depression and anxiety), yet admitted that she worked 12 hours a week as a real estate assistant from August 1999 through October 2001, performing such duties as opening homes, greeting and responding to customers, and performing accounting work (AR 18, 366-67). In this regard, the ALJ noted that in September 1998, when meeting with psychiatrist Ellen Norton, M.D., plaintiff was unable to identify any stressors in her environment other than that she was in the process of dissolving her business (AR 19, 131). Plaintiff made no mention of a diagnosis of fibromyalgia or chronic fatigue at that time (AR 19, 133).

In addition, despite plaintiff's claim that she could not leave the house, the records indicate that she reported an injury to her head while boating and that she traveled to Orlando and the Bahamas (AR 18-19, 164, 377-78). The medical records related to plaintiff's head injury include her report that the head pain became worse while walking fast or running (AR 18). Activities such as boating, running and traveling to resorts are inconsistent with a person alleging that she has a mental impairment so profound that she cannot leave her house, has no stamina, and needs to avoid crowded places (AR 370-71). The ALJ could reasonably find that plaintiff's alleged extreme

14

limitations are not credible. Accordingly, the ALJ could rely on the VE's testimony based upon the less restrictive hypothetical question, which in turn provides an adequate basis for the ALJ's finding that plaintiff could perform work in the national economy.

## IV. Recommendation

I find there is substantial evidence to support the findings of the ALJ. Therefore, I respectfully recommend that the Commissioner's decision be affirmed.

Dated: July 19, 2005            /s/ Hugh W. Brenneman, Jr.
                                Hugh W. Brenneman, Jr.
                                United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).